PFS:df

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6154-CR-DIMITROULEAS



UNITED STATES OF AMERICA,

        Plaintiff,

v.

PERCY MORRIS,

        Defendant.
_____/

### GOVERNMENT'S RESPONSE TO THE STANDING DISCOVER ORDER

The United States hereby files this response to the Standing Discovery Order. This response also complies with Local Rule 88.10 and Federal Rule of Criminal Procedure 16, and is numbered to correspond with Local Rule 88.10.

   A.   1.   The government is in possession of 133 cassette tape recordings containing approximately 1000 conversations regarding court authorized wire interceptions. The government is further in possession of approximately 41 cassette tape recordings corresponding to consensually recorded conversations. One full set of tapes and transcripts will be provided to an attorney designated by counsel for use by all parties.

           2.   That portion of the written record containing the substance of any oral statement made by the defendant before or after arrest in response to interrogation by any person then known to the defendant to be a government agent is attached.

           3.   No defendant testified before the Grand Jury.

           4.   The NCIC record of the defendant, if any exists, will be made available upon receipt by this office.



5.  Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, or were obtained or belonging to the defendant may be inspected at a mutually convenient time at the Office of the United States Attorney, 500 East Broward Blvd., Suite 700, Fort Lauderdale, Florida. Please call the undersigned to set up a date and time that is convenient to all counsel.

6.  Not applicable.

B.  DEMAND FOR RECIPROCAL DISCOVERY: The United States requests the disclosure and production of materials enumerated as items 1, 2 and 3 of Section B of the Standing Discovery Order. This request is also made pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure.

C.  The government will disclose under separate cover any information or material which may be favorable on the issues of guilt or punishment within the scope of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

D.  The government will disclose under separate cover any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses, within the scope of <u>Giglio v. United States</u>, 405 U.S. 150 (1972), or <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

E.  The government will disclose any prior convictions of any alleged co-conspirator, accomplice or informant who will testify for the government at trial.

F.  Not applicable.

G.  The government has advised its agents and officers involved in this case to preserve all rough notes.

H.  The government will timely advise the defendant of its intent, if any, to introduce during its case in chief proof of evidence pursuant to F.R.E. 404(b). You are hereby on notice that all evidence made available to you for inspection, as well as all statements disclosed herein or in any future discovery letter, may be offered in the trial of this cause, under F.R.E. 404(b) or

        otherwise (including the inextricably-intertwined doctrine).

I.    The defendant is an aggrieved person, as defined in Title 18, United States Code, Section 2510(11), of any electronic surveillance.

J.    The government has ordered transcribed the Grand Jury testimony of all witnesses who will testify for the government at the trial of this cause.

K.    No contraband is involved in this indictment.

L.    Not applicable.

M.    Not applicable.

N.    The government will under separate cover, provide notice of summary and expert testimony that it reasonably expects to offer at trial, such testimony will include gambling records analysis and organized crime structure analysis.

O.    The government will make every possible effort in good faith to stipulate to all facts or points of law the truth and existence of which is not contested and the early resolution of which will expedite trial. These stipulations will be discussed at the discovery conference.

P.    At the discovery conference scheduled in Section A.5, above, the government will seek written stipulations to agreed facts in this case, to be signed by the defendant and defense counsel.

The government is aware of its continuing duty to disclose such newly discovered additional information required by the Standing Discovery Order, Rule 16(c) of the Federal Rules of Criminal Procedure, Brady, Giglio, Napue, and the obligation to assure a fair trial.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY
Court ID #: A5500086
500 E. Broward Blvd., 7th Floor
Fort Lauderdale, Florida  33394
Telephone: (954) 356-7392
Facsimile: (954) 356-7230

4

CERTIFICATE OF SERVICE

    I HEREBY certify that a true and correct copy of the foregoing was mailed this ____ day of _____, 2000 to:

William Norris, Esquire
3225 Aviation Avenue, Suite 300
Coconut Grove, FL 33133-4741

                                              _____
                                              PAUL F. SCHWARTZ
                                              ASSISTANT UNITED STATES ATTORNEY

- 1 -

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription    6/23/00

       On June 21, 2000, PERCY LEAON MORRIS, a.k.a. TINY MORRIS, dob 8/12/64, SSAN 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, while being processed at the FBI, 16320 NW 2nd Avenue, North Miami Beach, Florida, provided the following statement to agents. Prior to providing this statement, agents recited the Miranda rights. MORRIS indicated that he understood these rights and agreed to provide a statement without attorney representation. Additionally, MORRIS indicated that he was not a high school graduate, however he understood his rights inasmuch as they had been read to him (MORRIS) during prior arrests.

       During the course of the interview, MORRIS asked for and received a cup of cold water.

       MORRIS advised that he first met JOSEPH ROTUNNO at a club in Fort Lauderdale, Florida in approximately 1994. MORRIS indicated that during this time he worked as a bouncer at this club and noted that ROTUNNO would often frequent this establishment.

       MORRIS noted that as he became more acquainted with ROTUNNO, he was eventually offered a job to work for ROTUNNO. MORRIS described that he would occasionally perform bodyguard work for individuals coming to South Florida from New York, at the behest of ROTUNNO. This particular job, according to MORRIS, would entail escorting these individuals around South Florida and provide protection should any problems arise.

       Consequently, MORRIS began collecting money from individuals throughout South Florida for ROTUNNO. MORRIS realized that these individuals had accrued gambling debts from a gambling racket which MORRIS said ROTUNNO controlled. MORRIS noted that he was paid one hundred dollars each time he collected money or paid money based on winnings or losses from the individual betters. MORRIS indicated that the most money he ever picked up for ROTUNNO was fifteen thousand dollars.

       Eventually, MORRIS was hired by ROTUNNO to provide security for a company in Boca Raton called P.R.S.I. MORRIS noted that this company was actually some type of telemarketing

---

Investigation on    6/21/00    at    North Miami Beach, FL

File #   281A-MM-88637                 Date dictated    6/23/00

by   SA Jay Fenske / SA Patrick G. Brodsky:bqb

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

281A-MM-88637

Continuation of FD-302 of __PERCY LEAON MORRIS JR_____ , On _6/21/00_____ , Page __2__

scheme that was consequently raided by local law enforcement authorities. MORRIS recalled seeing this law enforcement raid on television, indicating that he was fortunate to have not been present during the raid.